1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5
6

UNITED STATES OF AMERICA,

7
                                    Plaintiff,

8            v.

9    MATHIAS DOUGLAS KANE,

                                    Defendant.

10

Case No. 3:20-mj-5054 TLF

AMENDED DETENTION ORDER

11    I.        INTRODUCTION

12            The Court, having conducted a detention hearing under 18 U.S.C. § 3142(f),

13    concludes that there are no conditions, or combination of conditions the defendant can

14    meet that would reasonably assure the defendant's appearance as required or the

15    safety of any other person and the community.

16            The Court considered the entire set of documents, all the proffers and arguments

17    presented during the hearing on March 20, 2020, and listened to a Compact Disc that

18    contained a digital copy of the audio recording of the hearing that occurred on March

19    17, 2020 in the United States District Court for the Western District of Washington at

20    Seattle, before the Honorable Michelle L. Peterson, United States Magistrate Judge.

21    The record considered by the Court includes the Complaint (Dkt. 1,8), the Pretrial

22    Services Report (Dkt. 3); the Government's Motion for Detention (Dkt. 10), and the

23    Victim Impact Statement by email (submitted to the Court during the March 17, 2020

24
25

hearing). The Court also considered the First Supplemental Pretrial Services Report (Dkt. 13); the defendant's Memorandum re: Detention Hearing (Dkt. 12); and the Government's Exhibits 1 and 2 (submitted to the Court during the March 20, 2020 hearing).

The defendant waived physical presence in the Court, and consented to participate in the hearings on March 17, 2020 and March 20, 2020 by video conference. The defendant was present at the United States Courthouse for the Western District of Washington – but was located in another courtroom within the same courthouse in Seattle, Washington as the courtroom where Magistrate Judge Peterson was conducting the hearing on March 17 -- and another courtroom in Tacoma, Washington within the same courthouse as the courtroom where Magistrate Judge Fricke was conducting the hearing on March 20.

Defense counsel was connected to the defendant by telephone, and the Court maintained the confidentiality of those phone conversations.

During the hearing on March 17, 2020, the defense attorney and the Assistant United States Attorney were present in the courtroom. Defense counsel and the Assistant United States Attorney participated in the March 20, 2020 hearing by telephone. The judges were present in the Court.

These measures were taken to comply with the protocol published by The Honorable Ricardo S. Martinez, Chief Judge of the United States District Court for the Western District of Washington -- General Order 02-20, issued on March 17, 2020.

In addition, the Governor of Washington, Jay Inslee, issued Proclamation 20-14 on March 16, 2020; this proclamation is consistent with directives from the President of

the United States; it requires individuals to stay home and work remotely if possible; directs social distancing between each person of approximately 3-6 feet (based on guidance of the United States Centers for Disease Control and Prevention, and the Washington State Department of Health); and prohibits groups of persons from gathering; all of these restrictions being preventative measures to reduce the spread of a deadly virus -- the worldwide pandemic (declared by the World Health Organization), pertaining to the Novel Corona Virus, and the COVID-19 disease that has sickened and led to the death of thousands of persons across the world. Governor Inslee directed that: "activities of less than 50 people are also prohibited, unless organizers of those activities comply with social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines. The provisions of this order shall remain in effect until midnight on March 31, 2020, unless extended beyond that date." Governor Inslee's Proclamation 20-14 (3/16/2020) at 2. The Governor also stated that: "Violators of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5)." *Id.*

The area that is served by the Western District of Washington was, and currently is, affected by this Novel Corona Virus, COVID-19 pandemic during March of 2020, as described in Governor Inslee's many proclamations (20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, 20-13, and 20-14), and as evidenced by information published on the Washington State Coronavirus Response COVID-19 website.

https://www.coronavirus.wa.gov

As of the date of this order (March 23, 2020), the President of the United States has declared that a major disaster exists in the State of Washington, and ordered

Federal assistance due to COVID-19 in affected areas beginning on January 20, 2020

and continuing – as announced on March 22, 2020:

https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-approves-

washington-disaster-declaration-2/

II.    ANALYSIS

The defendant is charged in the United States District Court for the Western

District of Washington with having committed: On or about January 5, 2020 through on

or about January 31, 2020 -- one count of cyberstalking under 18 U.S.C. § 2261A(2)(A),

(B); and on or about January 12, 2020, and on or about January 20, 2020, two counts of

making interstate threats under 18 U.S.C. § 875(c).

The defendant is entitled to a presumption of innocence, and under the Bail

Reform Act, the Court is required to determine – taking into full consideration the

defendant's constitutional rights and that the defendant is presumed innocent – whether

the defendant should nevertheless be detained pending trial. *Taylor v. Kentucky,* 436

U.S. 478 (1978); *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985).

The Complaint charges the defendant, Mr. Kane, with having committed three

felony offenses, two of which are for making Interstate Threats, 18 U.S.C. § 875(c),

which is a crime of violence as defined under 18 U.S.C. § 3156 (a)(4)(A) of the Bail

Reform Act. Complaint, Dkt. 8, 2; *United States v. Santoro, 3*59 F. Supp. 3d 122, 126-

128 (D. Maine 2019); *see also US v. De La Fuente* 353 F.3d 766, 769-771 (9th Cir.

2003) (holding that the crime of Interstate Threats is a crime of violence under the

United States Sentencing Guidelines, 18 U.S.C. § 16 (c)). The United States Supreme

Court has interpreted the elements of the crime of Interstate Threats under 18 U.S.C. §

875(c), and held that negligence is not sufficient as the mental state for this offense; the

Government must prove beyond a reasonable doubt that the defendant transmits a

communication with the intent to send a threat, for the purpose of issuing a threat, or

with knowledge that the communication will be viewed as a threat. *See* Ninth Circuit

Model Criminal Jury Instruction 8.47B, Transmitting A Communication Containing a

Threat to Kidnap or Injure (approved September, 2015). The Court in *Elonis* declined to

decide whether a recklessness mens rea would be legally supported. *Elonis v. United*

*States,* 575 U.S. 723 (2015); *United States v. Khan,* 937 F.3d 1042, 1050-1052 (7th Cir.

2019).

    Upon the government's motion for detention in a case of a crime of violence, the

Court must hold a hearing to determine whether any condition or combination of

conditions set forth in 18 U.S.C. § 3142(c) "will reasonably assure the appearance" of

the defendant and "the safety of any other person and the community." 18 U.S.C. §

3142(f)(1)(A). Government's Motion for Detention, Dkt. 10.

    The Court—in determining whether release will reasonably assure the

defendant's appearance as required and for the safety of any other person and the

community—must take into account "the available information" concerning:

    (1)  the nature and circumstances of the offense charged, including
          whether the offense is a crime of violence. . .;

    (2)  the weight of the evidence against the person;

    (3)  the history and characteristics of the person, including—

        (A)  the person's character, physical and mental condition, family
            ties, employment, financial resources, length of residence in
            the community, community ties, past conduct, history relating
            to drug or alcohol abuse, criminal history, and record
            concerning appearance at court proceedings; and

<blockquote>
(B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.
</blockquote>

18 U.S.C. § 3142(g). The weight of the evidence is the least important factor to consider. *Motamedi*, 767 F.2d at 1406.

Although the four factors listed in 18 U.S.C. § 3142(g) permit this Court to consider the nature of the offense currently charged, and the evidence of guilt, these factors are considered only in the context of evaluating the likelihood that the person will fail to appear or will pose a danger. *Motamedi,* 767 F.2d at 1408. Even if a defendant poses a danger to others or to the community, the defendant must be released when the Court determines there would be a "condition or combination of conditions [that] will reasonably assure. . .the safety of any other person and the community." *United States v. Hir,* 517 F.3d 1081, 1091-92 (9th Cir. 2008).

Regarding risk of dangerousness concerning the safety of any person or the community, the government's burden of proof is "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). The government bears the burden of proving risk of non-appearance or risk of flight by "a clear preponderance of the evidence." *Motamedi*, 767 F.2d at 1406-07; *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

The Court finds that the government has met its burden regarding both the risk of dangerousness to others and to the community, and the risk of flight. In Mr. Kane's favor, the Court considered his proffer of evidence that he is a longtime resident of the state with stable ties to this jurisdiction, that he has strong connections to family and

AMENDED DETENTION ORDER - 6

1    friends in the area, and that the defendant very clearly cares about his family.

2    Defendant's Memorandum re: Detention Hearing, Dkt. 12. The Court finds these factors

3    are outweighed by the evidence presented by the government, both in the Complaint

4    and on proffer, regarding the defendant's prior conviction of a felony charge of failure to

5    comply with an anti-harassment court order; the defendant's text messages on March

6    15, 2020, showing that he communicated with his daughter about leaving the state of

7    Washington in order to avoid further action by the Washington State Department of

8    Social and Health Services concerning the state court dependency proceedings; and the

9    serious nature of the specific threats described in the Complaint and as described by the

10   Victim Impact Statement. First Supplemental Pretrial Services Report, at 4-5;

11   Government's Ex. 1 & 2; Victim Impact Statement.

12        The Court considered defendant's pending 2015 Multnomah County Circuit

13   Court, Portland, Oregon, arrest warrant based on Mr. Kane's attempt to illegally

14   purchase a firearm by making false statements about not having a prior conviction that

15   would prohibit the possession of a firearm. First Supplemental Pretrial Services Report

16   at 5. Given these allegations of defendant's false statements -- as proffered by the

17   Government during the detention hearing – this also supports a finding of

18   dangerousness and shows a lack of respect for court-ordered restrictions. The

19   Complaint also cites to evidence of defendant's repeated social media posts on his use

20   and possession of firearms and ammunition; therefore, this Court finds Mr. Kane's

21   assertions and arguments ((Dkt. 12 at 2) denying his current access to and possession

22   of weapons, cannot be relied upon. Dkt. 1 at 10-11. In light of this evidence, the Court

23

24

25

1    finds that Mr. Kane would likely pose a severe risk to other persons, and to community

2    safety, if released on supervision.

3              Regarding the risk of flight, Mr. Kane stated that he intended to flee to both Idaho

4    and Oregon in connection with the child custody proceedings precipitating his arrest. Mr.

5    Kane was previously advised in state court that if he took his daughter and girlfriend with

6    him to Idaho, as he declared he intended, he would violate court orders in child custody

7    proceedings. Notwithstanding this information, the government submitted evidence of

8    Mr. Kane's subsequent communications (by text messages on March 15, 2020) to meet

9    with his daughter in Oregon – text messages made the day prior to his arrest for the

10   alleged offenses in this Complaint. Complaint, Dkt. 8; Government's Ex. 1, 2.

11             The Court is not persuaded that Mr. Kane's ties to the community and family

12   support, combined with any of the pre-trial restrictions, would mitigate the flight risk or

13   risk of danger to the community or to specific persons; there are no conditions or

14   combination of conditions that would reasonably ensure Mr. Kane's compliance with the

15   terms of release into the community. Mr. Kane has repeatedly demonstrated that he

16   would violate court orders, including an anti-harassment order, and the evidence

17   indicates that he may have access to firearms that would facilitate Mr. Kane to act on

18   previously expressed threats.

19             The Court finds that no condition or combination of conditions of release would

20   reasonably assure that Mr. Kane would appear in court as required or that defendant

21   would not endanger any other person or the community. The means by which he

22   allegedly committed the charged offenses is by using the internet – a worldwide online

23   platform called "Disqus". Dkt. 8 at 4. How he communicated his intent to leave

24

25

AMENDED DETENTION ORDER - 8

1   Washington State and take his daughter to Oregon, was a text message. Government's

2   Ex. 1, 2. The Court would not be able to effectively supervise the defendant's access to

3   all means of digital communication – pretrial services professionals cannot be expected

4   to follow him everywhere and determine whether he is using his own device (or

5   someone else's device) or directing others to communicate plans to flee, or to

6   communicate threats. Moreover, the Court is concerned – based on the defendant's

7   behavior and criminal history -- that the defendant would disrespect all court orders and

8   decide not follow whatever orders the Court would put into a list of conditions of

9   supervision. Based on his prior conviction for violating an anti-harassment order, and the

10  fact there is a warrant outstanding from an Oregon court dating back to 2015, this Court

11  finds that there is a high probability that Mr. Kane would also violate bond and conditions

12  of release if this Court were to enter such an order.

13

14

15

16

17

18

19

20

21

22

23

24

25

AMENDED DETENTION ORDER - 9

1

2

3          III.     ORDER

4                   It is therefore **ORDERED:** The Government's motion for detention (Dkt.

5          10), is GRANTED.

6          (1)     Defendant shall be detained pending trial and committed to the custody of

7    the Attorney General for confinement in a correctional facility separate, to the extent

8    practicable, from persons awaiting or serving sentences, or being held in custody

9    pending appeal;

10         (2)     Defendant shall be afforded reasonable opportunity for private

11   consultation with counsel;

12         (3)     On order of a court of the United States or on request of an attorney for

13   the Government, the person in charge of the correctional facility in which Defendant is

14   confined shall deliver the defendant to a United States Marshal for the purpose of an

15   appearance in connection with a court proceeding; and

16         (4)     The Clerk shall provide copies of this order to all counsel, the United

17   States Marshal, and to the United States Probation and Pretrial Services Officer.

18                 Dated this 3rd day of April, 2020.

19

20

21

                                                    Theresa L. Fricke
22                                                  United States Magistrate Judge

23

24

25

AMENDED DETENTION ORDER - 10