1                  UNITED STATES DISTRICT COURT

2                 WESTERN DISTRICT OF WASHINGTON

3                           AT TACOMA

4        _____

5        In the matter of:            )

6        UNITED STATES OF AMERICA,     )

7                        Plaintiff,    )

8             vs.                      ) No. 3:20-mj-05054-BHS-TLF-1

9         MATHIAS KANE,                )

10                       Defendant.    )

11       _____

12                        DETENTION HEARING

13          The Honorable Theresa L. Fricke Presiding

14                        March 20, 2020

15       _____

16

17

18

19

20

21

22

23       Transcribed by:  Reed Jackson Watkins

24                         Court-Certified Transcription

25                         206.624.3005

```
 1                    A P P E A R A N C E S

 2

 3       PRESIDING JUDGE:   THERESA L. FRICKE

 4

 5       FOR THE UNITED STATES:

 6             TODD GREENBERG (Present via video)

 7             Assistant United States Attorney

 8             United States Attorney's Office

 9             700 Stewart Street, Suite 5220

10             Seattle, Washington 98101-3903

11

12       FOR THE DEFENDANT:

13             HEATHER CARROLL (Present via video)

14             Federal Public Defenders Office

15             1331 Broadway, Suite 400

16             Tacoma, Washington 98402

17

18       ALSO PRESENT:  Mathias Kane (Present via video)

19                      Jamie Halvorson, Pretrial Services

20                        (Present via video)

21

22

23

24

25
```

```
1                        -o0o-

2                  March 20, 2020

3

4          THE CLERK:  -- for the Western District of

5     Washington is now in session, the Honorable Theresa L.

6     Fricke presiding.

7          THE COURT:  Please have a seat.  This is United

8     States versus Mathias Douglas Kane, case number

9     MJ-20-05054.  Would the parties please introduce

10    yourselves for the record, starting with counsel for the

11    defendant.

12         MS. CARROLL:  Thank you, Your Honor.  This is

13    Heather Carroll from the Federal Defenders Office on

14    behalf of Mr. Kane.

15         MR. GREENBERG:  Your Honor, this is Todd Greenberg

16    representing the United States.

17         MS. HALVORSON:  This is Jamie Halvorson

18    representing United States Probation (inaudible).

19         THE COURT:  And I will note that the Court is

20    viewing a video monitor, and on the video monitor, I am

21    able to observe that there is an individual seated at

22    counsel table in a courtroom, and I would like to ask

23    the individual, who I believe is the defendant, if you

24    can acknowledge that you are seated in a courtroom here

25    at the United States District Court and that you can
```

1          hear what I'm saying.

2              MATHIAS KANE:  Yes, I acknowledge I'm sitting here

3          in District Court, and I can hear what you're saying.

4              THE COURT:  Are you also able to see the face and

5          the place where the judge is sitting?

6              MATHIAS KANE:  I can, Your Honor.

7              THE COURT:  Excellent.  I am able to hear

8          everything that you are saying and I'm able to see you

9          clearly.  Let me ask counsel, are you able to hear me as

10         well as the defendant?

11             MS. CARROLL:  This is defense counsel.  Yes, I can,

12         Your Honor.

13             MR. GREENBERG:  Yes, for the government, Your

14         Honor.

15             THE COURT:  Okay.  And, Mr. Kane, thank you for

16         confirming that.

17             MATHIAS KANE:  You're welcome, Your Honor.

18             THE COURT:  I have reviewed the first supplemental

19         pretrial services report.  I have reviewed the original

20         pretrial services report.  I have reviewed the defense

21         memorandum regarding the detention hearing.  I've

22         reviewed the complaint.  I have also listened to the

23         hearing that was recorded on March 17th, this past

24         Tuesday, and that hearing took place at the United

25         States District Court in Seattle before the Honorable

1      Michelle L. Peterson, magistrate judge.

2          And I want to confirm for counsel and for you,

3      Mr. Kane, that I listened to the entire recording and I

4      took careful notes, and I have those notes with me.  I

5      also reviewed the government's motion for detention, and

6      I also have reviewed the -- the statement of the alleged

7      victim that was provided by e-mail to the Court, and as

8      I was listening to the recorded hearing that occurred on

9      the 17th of March, I was able to hear that the assistant

10     United States Attorney put that document formally before

11     the Court.

12         I also would like to state for the record that on

13     the 17th of March, there was a general order issued by

14     our chief district judge, Ricardo S. Martinez.  That

15     general order is number 02-20 regarding court operations

16     under the exigent circumstances created by COVID 19 and

17     related Coronavirus.  I want to confirm that counsel

18     have received a copy of or have had the opportunity to

19     review it on line, the general order number 02-20.

20         MS. CARROLL:  Defense has, Your Honor.

21         MR. GREENBERG:  Yes, Your Honor.

22         THE COURT:  And then I also provided a copy of that

23     document so that defense counsel would be able to show

24     it to Mr. Kane.  And is that something that already

25     occurred on the 17th of March, or were you able to take

1    care of that today, or both?

2          MS. CARROLL:  I don't know if the general order was

3    shared with him.  I did review the consent with him.  I

4    did not go through the general order with -- with the

5    defendant, Your Honor.

6          THE COURT:  Okay.  And, Mr. Kane, I am observing on

7    the video here that you have some documents in front of

8    you.

9          MATHIAS KANE:  Yes.

10         THE COURT:  And is -- is one of those documents the

11   copy of the general order 02-20?

12         MATHIAS KANE:  Yes, it is, Your Honor.

13         THE COURT:  And do you have all four pages of it?

14         MATHIAS KANE:  I do, Your Honor.

15         THE COURT:  Okay.  Excellent.  So for the record, I

16   want to confirm that based on my listening and taking

17   notes of the recording on March 17th, 2020, that defense

18   counsel and the assistant United States attorney were

19   both present in the courtroom with Judge Michelle L.

20   Peterson presiding, and from what I listened to,

21   Mr. Kane, I believe, was in a separate courtroom.

22         Is that your understanding?  I'm asking counsel.

23   Is that your understanding of how it occurred?

24         MS. CARROLL:  That was my understanding from

25   talking with Ms. Pai-Thompson, Your Honor.

```
 1            THE COURT:  Okay.  Mr. Greenberg, were you present?

 2            MR. GREENBERG:  I was not present at that hearing,

 3      Your Honor, but -- but I share the Court's understanding

 4      of the logistics of the hearing.

 5            THE COURT:  Okay.  So it was a different assistant

 6      United States Attorney?  I believe, Mr. Lombardi, is

 7      that correct?

 8            MR. GREENBERG:  Yes, Your Honor.

 9            THE COURT:  Okay.  And let me also confirm that at

10      the very beginning of the hearing, on the 17th, again,

11      based on my notes and based on the careful listening

12      that I did earlier today, it sounded like, at first,

13      there was some amount of difficulty with the video and

14      audio equipment.  Mainly, the audio, but that was

15      eventually resolved early in the hearing.  And so I want

16      to confirm with counsel, is that also your

17      understanding?

18            MS. CARROLL:  From defense, yes, it is, Your Honor.

19            MR. GREENBERG:  Yes, Your Honor.

20            THE COURT:  Okay.  So what I would like to do is,

21      first of all, I would like to re-advise Mr. Kane of your

22      rights, even though this is not your first time in

23      federal Court.  I like to make sure every defendant who

24      appears in my courtroom is well aware of the rights they

25      have.
```

1          MATHIAS KANE:  Thank you, Your Honor.

2          THE COURT:  First, let me tell you, you have the

3     right to remain silent.  You are not required to make

4     any statement whatsoever during this hearing.  Your

5     attorney may do all the talking, and she may express

6     anything that needs to be expressed at the hearing.  So

7     you're not required to make any statement.

8          If you already made a statement to law enforcement

9     or to anyone else, that does not mean that you have

10     forever given up your right to remain silent.  You may

11     invoke your right to remain silent at any time.

12          MATHIAS KANE:  Okay.

13          THE COURT:  You are not required to make any

14     statement to anybody, regardless of what's happening

15     between now and, you know, the entire time that this

16     criminal process in federal court is happening.  All of

17     the different hearings, all of the -- whatever trial or

18     whatever sentencing, or any -- any of that, you're not

19     required to make any statement.

20          MATHIAS KANE:  Okay.

21          THE COURT:  But if you decide you want to waive

22     your right to remain silent and you want to make a

23     statement, then keep in mind anything that you say can

24     and will be used against you in a court of law.

25          MATHIAS KANE:  Okay.

```
1              THE COURT:  Also keep in mind that if you were to
2      start to make a statement -- let's imagine for a moment
3      that the authorities are questioning you and you're
4      talking with them, if you start to make a statement, you
5      can stop right in the middle of what you're saying, even
6      if you're right in the middle of a sentence or right in
7      the middle of starting to utter a word, you can stop at
8      any time and tell them, "I'm exercising my right to
9      remain silent," and then --
10             MATHIAS KANE:  Okay.
11             THE COURT:  -- all questioning would have to come
12     to a stop.  Does that make sense?
13             MATHIAS KANE:  Yes.
14             THE COURT:  In addition, you have the right to have
15     your lawyer present during any questioning by
16     authorities.  So if the authorities want to question you
17     and you want to have your lawyer there with you, you
18     have a right to that.  So you can --
19             MATHIAS KANE:  Okay.
20             MR. GREENBERG:  -- tell the authorities, "I want my
21     lawyer here," and then all questioning has to come to a
22     stop until your lawyer is made available to you.
23             MATHIAS KANE:  Okay.
24             THE COURT:  You have a right to counsel during
25     every phase of a criminal matter.  You may consult with
```

```
1         your attorney in court and outside of court.  Your

2         attorney -- if you cannot afford to hire an attorney to

3         represent you, then the Court will appoint a lawyer to

4         represent you at no cost to you.  Now, I --

5              MATHIAS KANE:  Okay.

6              THE COURT:  -- know that has already occurred in

7         this case, that Judge Peterson --

8              MATHIAS KANE:  Yeah.

9              THE COURT:  -- appointed the Federal Public

10        Defenders Office, and Ms. Carroll is your attorney.

11             MATHIAS KANE:  Yes.

12             THE COURT:  I like to remind every defendant that

13        that is their right, to have an attorney at public

14        expense if you cannot afford to hire your own attorney.

15             MATHIAS KANE:  Okay.

16             THE COURT:  Do you understand your right to remain

17        silent and your right to counsel?

18             MATHIAS KANE:  I do, Your Honor.

19             THE COURT:  Okay.  Now, I'm also going to ask

20        Mr. Greenberg to advise again Mr. Kane of the charges

21        against him and the maximum possible penalties, and I'm

22        doing this just because there was some amount of -- you

23        know, as I was listening to the hearing, the recording

24        of the hearing on the 17th, some amount of difficulty

25        with the equipment.  I think we've got a really clear
```

1        system here today, and I want to make sure --

2               MATHIAS KANE:  Yes.

3               THE COURT:  -- that the defendant has a very solid

4        understanding of the charges.  The other thing I want to

5        make sure that the defendant has a solid understanding

6        of is that there is a specific intent element in the

7        charge that has to do with the threat, and I'm sure

8        you're aware of that.

9               So let me ask Mr. Greenberg if you would please

10       advise Mr. Kane of the charges and the maximum possible

11       penalties again on the record.

12              MR. GREENBERG:  Yes, Your Honor.  The complaint

13       contains three offenses alleged against the defendant.

14       Count 1 charges the offense of cyberstalking that's

15       alleged to have occurred beginning no later than on or

16       about January 5th, 2020, continuing through on or about

17       January 31st, 2020 in La Center.

18              That count alleges that the defendant, with the

19       intent to injure, harass and intimidate another person,

20       who is identified as BS, used a -- one of a variety of

21       electronic means that are listed in this count, engaged

22       in a course of conduct that placed BS in reasonable fear

23       of death and serious bodily injury, and caused,

24       attempted to cause, would be reasonably expected cause

25       substantial -- substantial emotional distress to BS.

1          That offense is an alleged violation of Title 18,

2     United States Code, section 2261(a), subsection (2)(a)

3     and (b).

4          The last two counts allege the offense of

5     interstate threat.  Count 2 is alleged to have taken

6     place on or about January 12th of 2020, with Count 3

7     being alleged on or about January 20th, 2020.  Both

8     counts allege that the defendant knowingly and willfully

9     transmitted, in interstate and foreign commerce in the

10    state of Washington to another state, communications in

11    the form of on-line internet posts that contain threats

12    to injure BS.

13         Both of those counts are alleged in violation of

14    Title 18, United States Code, section 875(c).  The

15    maximum penalties on all three counts are identical.

16    They are a maximum jail term per count of five years in

17    prison, a fine of up to $250,000, a three-year term of

18    supervised release and a $100 special assessment per

19    count.

20         THE COURT:  All right.  And now let me ask defense

21    counsel, have you had the opportunity to consult with

22    your client about the consent to proceed by video

23    conference and waiver of in-person appearance?

24         It's my understanding that that occurred at the

25    last hearing, but it seems to me that in order to make a

```
1        crystal clear record, having that in writing would be

2        beneficial.  I supplied a sample form, and I wanted to

3        confirm whether that's something that defense counsel

4        and Mr. Kane would be willing to consider.

5              MS. CARROLL:  Your Honor, I did have a chance to

6        review that with him just prior to this hearing on the

7        phone.  My understanding is he is willing to consent to

8        proceeding as we are today.

9              THE COURT:  Okay.  And Mr.  --

10             MS. CARROLL:  With the understanding that he is not

11       giving up any rights to argue about detention or -- or

12       those kinds of things, but merely consenting to the form

13       of the proceeding as we're doing today.

14             THE COURT:  Okay.  And, Ms. Carroll, the sample

15       consent and waiver that the deputy clerk of the court

16       provided, is that something that you have had a chance

17       to consult with your client about?

18             MS. CARROLL:  Yes, I am -- I printed it out and I

19       -- I read it to him prior to the hearing, and I'm

20       looking at it now.

21             THE COURT:  Okay.  And, Mr. Kane, do you have a

22       copy of that consent to proceed by video conference and

23       waiver of in-person appearance?  It's a two-page

24       document.

25             MATHIAS KANE:  I do.  I have it right here, Your
```

 1     Honor.

 2          THE COURT:  And let me ask whether you have a means

 3     of being able to sign, or do we need to bring a pen over

 4     for you?

 5          MATHIAS KANE:  I have a pen.  I can do it.  Do you

 6     want me to sign it now?

 7          THE COURT:  If you are ready.

 8          MATHIAS KANE:  Yes.  It has been signed, Your

 9     Honor.

10          THE COURT:  And let me ask you, Mr. Kane, do you

11     have any questions or concerns having to do with the

12     ability to hear me and participate in this hearing?

13          MATHIAS KANE:  Not at all.

14          THE COURT:  Okay.  And do you feel that you have

15     had a conversation with your attorney that causes you to

16     feel this is a consent and waiver that you are

17     comfortable with?  In other words, do you feel confident

18     in your attorney's advice and representation?

19          MATHIAS KANE:  I do, Your Honor.

20          THE COURT:  Okay.  I will accept the defendant's

21     written consent to proceed by video conference and the

22     defendant's waiver of in-person appearance.

23          At this time, I would like to also advise you,

24     Mr. Kane, that there is, within the legal interpretation

25     of one of the statutes that you're charged under, and

1       this would be, I believe, Count 2 and Count 3, 18 United

2       States Code, section 875(c).

3            There has been an interpretation by the United

4       States Supreme Court in a case called Elonis versus

5       United States, and for counsels' information, the

6       citation is 135 Supreme Court 2001.  That's a 2015

7       United States Supreme Court opinion.

8            I'm also going to give counsel a Seventh Circuit

9       opinion that you can have a look at; United States

10      versus Khan, that's K-h-a-n, 973 Fed. 3d 1042, Seventh

11      Circuit, 2019.  Under the statute, the mental state

12      requirement is that the government would be required to

13      prove beyond a reasonable doubt that the defendant is

14      transmitting a communication with the intent to send a

15      threat.  In other words, for the purpose of issuing a

16      threat or with knowledge that the communication will be

17      viewed as a threat.  So there must be proof the speaker

18      intended the recipient of the threat to feel threatened.

19           So that's something that I thought it was important

20      that you be advised of and that the attorneys be aware

21      of, because as we just were talking about, it's very

22      important for the defendant to have a solid

23      understanding of the charges that are contained in the

24      complaint.

25           At this time, I'm also going to describe that here

1    in this courtroom, as well as in the courtroom where

2    Mr. Kane is present, which is right next door to this

3    courtroom, we are observing the requirements of Chief

4    Judge Martinez's general order 02-20, and I'm also

5    proceeding under the proclamation by Governor Inslee,

6    which I provided a copy of for counsel, and I'm not sure

7    whether Mr. Kane received a copy of that.

8         This is the proclamation issued by Governor Inslee

9    officially on the 16th day of March 2020.  It states

10   that for activities of less than 50 people, which of

11   course, this activity we're doing in court today is,

12   that those activities are prohibited unless the

13   organizers of those activities comply with social

14   distancing and sanitation measures established by the

15   United States Centers for Disease Control and Prevention

16   per the Washington State Department of Health

17   guidelines.

18        This order is going to be remaining in effect until

19   midnight March 31st, 2020, unless extended beyond that

20   date.  I also note, it says, violators of this order may

21   be subject to criminal penalties pursuant to RCW

22   43.06.220(5).

23        The reason I'm putting this on to the record is

24   this Court is doing everything it can to comply with the

25   governor's order, and to also give due process to

1    Mr. Kane and also give an opportunity for other

2    participants in the hearing, other folks who may have

3    called in to participate as a witness or as a

4    representative of the alleged victim or the alleged

5    victim in this matter, as well as any members of the

6    public.

7         The public and the press have a First Amendment

8    right to open courts.  And so by having this as a

9    hearing that's being conducted on the record and also

10   with a phone line that's available for people to

11   participate, we're doing the best we can to comply with

12   everything, is what I'm saying here.

13        I also want to put on the record that Mr. Kane,

14   because you were at the federal detention center, we are

15   trying to take extra precautions, because the federal

16   detention center, as a jail, people are in closer

17   quarters than anyone would want to be at this time.

18        MATHIAS KANE:  Yes.

19        THE COURT:  And I feel certain that not only you

20   realize that that is a difficulty at the federal

21   detention center, but all of us realize that that's a

22   situation that you found yourself in, that we need to

23   take extra precautions for you because of the --

24        MATHIAS KANE:  Yes.

25        THE COURT:  -- potential for that exposure, being

1     so close to other people.

2          MATHIAS KANE:  Yes.

3          THE COURT:  So I wanted to make sure and explain

4     all of that for the record.  This is not the way I

5     normally conduct court.  I much, much prefer to have

6     everyone in the courtroom, and to have the defendant --

7     and you, Mr. Kane, I'm sure, can understand this.  I

8     want to have the defendant right here in court with me.

9          MATHIAS KANE:  Yes.

10         THE COURT:  So we are doing the very best we can

11    under these circumstances, and I just wanted to be able

12    to explain that to you and to everyone present and

13    anyone who is on the phone right now.

14         Now, if there are individuals who have called into

15    this hearing, please keep in mind you have to keep your

16    mute button on or keep the phone covered, if you don't

17    have a mute button, until there is a point in the

18    hearing -- if it turns out that you are a participant in

19    the hearing, then we will advise you when it's time for

20    you to speak, and then you can remove the mute or take

21    your hand off the phone, and -- and you'll be able to

22    participate.

23         In the meantime, you'll be able to listen to

24    everything, but as we would always do in Court, the

25    people who are here as the individuals who are listening

 1    and participating from our gallery, you're not allowed

 2    to speak unless the Court recognizes you as a person who

 3    is authorized to speak.

 4        So I don't want anyone to sort of jump in and start

 5    talking, because, hey, we're all used to talking on the

 6    phone, and it might feel a little bit odd to be in this

 7    situation and not be able to say anything.  But that's

 8    how we need to conduct court today, and so I wanted to

 9    advise anyone on the telephone that that is what's

10    happening.

11        Also, I want to let you know, Mr. Kane, if at any

12    time you want to have a private conversation with your

13    lawyer, please say the word.  Just say, "Your Honor,"

14    put your hand up, I will be able to then look at you,

15    and then I'll know that's what's happening.  And we can

16    take a recess --

17        MATHIAS KANE:  Thank you.

18        THE COURT:  -- for that purpose so that no one

19    hears the conversation, and you and your attorney can

20    have a private conversation.  And, likewise --

21        MATHIAS KANE:  Okay.

22        THE COURT:  -- Ms. Carroll, the same thing for you.

23    If at some point you want to have a private conversation

24    with your client, Mr. Kane, please advise me of that,

25    and we will do that.

1          MS. CARROLL:  Thank you, Your Honor.

2          THE COURT:  All right.  It is my understanding,

3     based on my listening to the recorded hearing on the

4     17th of March, as well as looking at the docket, that

5     this is a somewhat unusual situation, where instead of

6     having set the next hearing as being the preliminary

7     hearing, which we would normally set under the Court

8     rules.  Instead, there is a status hearing set for the

9     17th of April, is that correct?

10         MR. GREENBERG:  Yes, Your Honor.

11         THE COURT:  Okay.  I just wanted to confirm that.

12    And I'll confirm with the deputy clerk that that is now

13    on the calendar, is that correct?

14         THE CLERK:  Before Judge Creatura, that is correct.

15         THE COURT:  Okay.  And what time on the 17th is

16    that scheduled to occur?

17         THE CLERK:  That is set for 10:30 AM.

18         THE COURT:  Okay.  So I'm glad we were able to

19    confirm that.  Okay.  At this time, I believe our next

20    order of business is to proceed with the hearing

21    concerning detention or release, unless there is some

22    other matter that the parties wish to raise before we

23    proceed to that part of the hearing.

24         MR. GREENBERG:  Your Honor --

25         MATHIAS KANE:  Could I speak to my attorney?

```
1              THE COURT:  Would you like us to clear the
2       courtroom?
3              MATHIAS KANE:  Yeah, I'd like to ask her if you
4       could --
5              THE COURT:  Okay.  Don't tell me -- don't tell me
6       anything else.
7              MATHIAS KANE:  Okay.
8              THE COURT:  Okay.  We will now clear the courtroom.
9       The Court will be in recess pending a conversation
10      between the defendant and counsel.  The Court is now in
11      recess.
12             THE CLERK:  All rise.
13             (A short recess was then taken.)
14             THE CLERK:  The court is again in session.  The
15      Honorable Theresa L. Fricke presiding.
16             THE COURT:  Please be seated.  Are the parties
17      ready to proceed with the hearing concerning release or
18      detention?
19             MS. CARROLL:  The defense is ready, Your Honor.
20             MR. GREENBERG:  Yes, Your Honor.
21             THE COURT:  All right.  Since this is the
22      Government's motion, we'll start with the Government.
23             MR. GREENBERG:  Thank you, Your Honor.  Before I
24      begin, I wanted to ask one question.  And that is, did
25      the Court have the two exhibits that the Government
```

1    submitted earlier today?  The Court didn't mention those

2    among the items that it has reviewed, so I'm just double

3    checking.

4         THE COURT:  I believe they were given to me.  I

5    have not yet reviewed them.

6         MR. GREENBERG:  Okay.  And that's fine, Your Honor.

7    I'll -- I'll -- I'll refer the Court to the exhibits

8    when they come up.  Thank you.

9         Your Honor, you're aware the Government is asking

10   the Court to enter a detention order in this case.  We

11   don't do that lightly.  We understand the times we're

12   living in right now, but in this particular case, we do

13   feel strongly that Mr. Kane's release would be both a

14   danger to the community -- that is our primary

15   argument -- as well as would present a risk of his

16   flight, and so we are seeking detention in this matter.

17        I would note that the probation office concurs in

18   that same recommendation in their report to the Court.

19        Your Honor, the primary concern that we have and

20   the primary reason we think detention is necessary here

21   is texts on numerous specific individuals and type

22   classes of individuals in the community.  First and

23   foremost, the need to protect the victim of the charged

24   count of BS.

25        As the Court knows from the complaint, Mr. Kane has

1    alleged to have engaged in a long pattern of conduct

2    harassing her, threatening her.  He publicly posted her

3    address on line.  He encouraged others and incited

4    others to, in his words, quote, "trash this Jew cunt."

5        He also drove by the victim's house, it sounds

6    like, on multiple occasions.  One of those occasions

7    described in the complaint, he went by the house in an

8    intimidating fashion.  His conduct shows that it's not

9    just on-line; that he is doing this in the real world as

10   well.

11       Understandably, the victim is extremely fearful of

12   Mr. Kane.  She reported his conduct to the police on

13   multiple occasions.  She's obtained a no contact order

14   in state court against him, and she speaks, I think, for

15   herself in the victim impact statement that has been

16   submitted to the Court.  She's making clear that

17   harrassment, the threats, both on line and in person,

18   and that she lives in fear of Mr. Kane.  That's only

19   exacerbated by the fact that they live on the same

20   street, just a few houses away from each other.

21       In addition to needing to protect -- protect the

22   victim against Mr. Kane, we also, I would submit, need

23   to protect police officers and the CPS workers from

24   Mr. Kane.  He has made, as outlined in the complaint,

25   numerous posts threatening to harm police officers and

1    CPS workers who are involved in his case.  He had been

2    -- and again, this isn't just on line, but in the real

3    world -- he has been (inaudible) and erratic and

4    harassing with police officers.

5        In February 2020 -- and this is not in the

6    complaint, but I have a police report documenting this

7    -- Mr. Kane visited the La Center Police Department, was

8    belligerent with the officers, ultimately challenged one

9    of the officers to a fight.

10        He also, as documented in the complaint, refused to

11    interact with the officers when they tried to serve him

12    with legal papers.  He is flagged -- because of his

13    behavior, he's been flagged as someone who police

14    officers should treat as a dangerous individual.

15        He is the same way with the CPS workers.  The CPS

16    records, in their documentation, document numerous

17    instances where --

18        MS. CARROLL:  Your Honor, I'm going to object to

19    the -- I understand the Rules of Evidence may be relaxed

20    in this, but I haven't reviewed any of this.  I don't

21    know what context or I haven't been able to examine any

22    of these police reports.  So I would ask the Court not

23    to allow any of this evidence into the detention

24    hearing.

25        THE COURT:  Let me ask you this, Mr. Greenberg.  Is

1      this a proffer that you are putting into the record

2      that's based on information that you are either about to

3      provide to the defense or you already have provided to

4      the defense?

5          MR. GREENBERG:  It is a proffer based on

6      information, Your Honor.  And, yes, all of this will be

7      provided to the defense.  Of course, we haven't produced

8      discovery in this case, and so it has not yet been

9      produced.  But I am proffering these (inaudible) to the

10     Court based on the records that I have.

11         THE COURT:  All right.  And I believe that,

12     Ms. Carroll, the Bail Reform Act allows both parties to

13     put into the record information by proffer.  And I

14     realize what you're saying is, gosh, I have not seen the

15     documentation of this yet and that you haven't had an

16     opportunity to interview various witnesses, and I think

17     that happens quite often in these initial hearings on

18     release or detention.

19         But I think it is allowed under the Bail Reform

20     Act, and I will take Mr. Greenberg's assurances that

21     this is material that will be provided to the defense in

22     discovery just as soon as the discovery exchange begins.

23         So I'm going to overrule your objection, and it is

24     noted for the record.

25         Also, as long as I'm asking for clarification,

1          Mr. Greenberg, let me ask you, is the Government's

2     contention that the Count 2 and Count 3 of the

3     complaint, that those charges would, under the Bail

4     Reform Act, be considered crimes of violence?

5          MR. GREENBERG:  Yes, Your Honor, that is -- that is

6     our contention.  We've indicated that on the motion for

7     detention.

8          THE COURT:  Now, the only sort of recent case I've

9     seen on this is United States versus Santoro.  That's

10    359 Fed. Supplement 3d 122.  That's the United States

11    District Court for the District of Maine, and that

12    opinion was issued in January -- January 24th of 2019,

13    finding that this particular statute and the crime of

14    interstate threat, that this would be a crime of

15    violence under the Bail Reform Act.

16          And then that case cites to United States versus

17    Chapman, which is 866 Fed. 3d 129, and that's August

18    4th, 2017, a Third Circuit opinion.  And it also refers

19    to a Ninth Circuit opinion, which is United States

20    versus De La Fuente, and that's 353 Federal 2d 766, and

21    that's Ninth Circuit 2003.

22          So I am comfortable with the Government's position

23    on that.  I just wanted to make that clear for the

24    record.

25          MR. GREENBERG:  Thank you, Your Honor.  Continuing

1      on with the -- with the proffer I was making.  Mr. Kane

2      has not only been belligerent, erratic with police

3      officers, but with the CPS workers he comes into contact

4      with as well.  He has made threats against them.  He's

5      made threats to harm BS to the CPS workers and generally

6      been, you know, very volatile in that environment.

7          Lastly, I think there is a need to protect Jewish

8      people in the community at large.  For months, on a

9      daily basis, Mr. Kane has made posts -- anti-semetic

10     posts, ranting threats, kill Jews.  This is particularly

11     of a concern to the FBI at this time, because I think

12     it's well documented at this point that there is a rise

13     in the support of anti-semetic sentiment and violence.

14     So, again, there's a concern there.

15         But one thing I want to point out to the Court as

16     to all of the concerns here are protecting the public

17     from the defendant is that he -- upcoming events are

18     very likely to trigger -- if Mr. Kane is released,

19     they're very likely to trigger him to act dangerously

20     and erratically, and that's because it's clear that the

21     primary trigger right now for Mr. Kane is the -- the

22     proceedings that are ongoing with respect to his

23     daughter.

24         I mean, that's made pretty clear by his postings.

25     And there are -- he is interacting in those proceedings

1    and with the people involved in those on a daily basis,

2    whether it's CPS folks, whether it is court hearings

3    that are scheduled -- at least they were scheduled for

4    mid-March.  I'm not sure if those have been delayed yet,

5    but there are a number of court hearings that are going

6    to be coming up at some point regarding that, and

7    there's a reason to be concerned that those events will

8    trigger him to act out, especially if they don't go his

9    way.  And, so far, during those proceedings, they have

10   not been going his way.  And so I think the concerns are

11   exacerbated by that.

12        When you look at Mr. Kane's history and

13   characteristics, again, I think that it makes clear that

14   he is -- would be a danger to this community, at the

15   least.  The pretrial -- the probation officer's report

16   documents -- in the complaint that we filed, documents

17   Mr. Kane has been convicted of three felonies; criminal

18   mischief, manufacturing controlled substances and

19   possession of controlled substances.

20        He's been convicted of two misdemeanor domestic

21   violence assaults, and I took particular note of his

22   conviction, albeit a misdemeanor conviction, but for

23   violation of an anti-harrassment order.  That's speaks

24   volumes here, because Mr. Kane is going to be asking

25   this Court to trust him, to release him, to abide by the

1    Court's orders.  And in this instance, at least, he was

2    convicted of violating an anti-harrassment order.

3         He also has an outstanding arrest warrant, and this

4    is noted in the recent probation report.  There's an

5    outstanding arrest warrant for Mr. Kane issued out of

6    Oregon in a serious case where he attempted to

7    unlawfully purchase a firearm, otherwise known as a "lie

8    and buy" crime.

9         And there are some acts in the probation report

10   regarding this.  I had the police report on that

11   incident, and I can proffer to the Court some additional

12   facts.  And that is that in May of 2015, Mr. Kane

13   attempted to purchase a firearm at a sporting goods

14   store in Gresham, Oregon.  When he did that, he lied on

15   the ATF federal form that one fills out when you buy a

16   firearm.

17        He lied in two ways.  First, he denied that he had

18   ever been convicted of a felony.  And then he denied

19   that he had ever been convicted of a domestic violence

20   misdemeanor offense, both of which would prohibit him

21   from possessing a gun.  An Oregon state patrol officer

22   responded, because the store ran his background and

23   found that these were lies, so they called the police.

24        And Mr. Kane's response, at that point, was to lie

25   to the officer repeatedly.  He told the officer he had

1      only been arrested once, when in fact, he's been

2      arrested -- it looks, through from the probation office,

3      (inaudible) times.  He told the officer that, quote, "he

4      forgot about all the arrests" once the officer ran his

5      criminal history.  He said he didn't know that any of

6      his prior convictions were felonies and that he had no

7      idea he had been convicted of domestic violence, even

8      though two of his offenses have the words "domestic

9      violence" in the title of the conviction.

10          So as a result of that, charges were filed against

11     him, and are still pending in Multnomah County, and --

12     in Circuit Court, and a warrant has been issued for him.

13     I think this incident, among the other conduct that we

14     see here, shows us that Mr. Kane cannot be trusted by

15     this Court.

16          At this point, let me refer the Court, if I may, to

17     the exhibits that we submitted.  There are two exhibits;

18     Exhibit 1 and two.  And I would submit to the Court --

19     I'm going to go over these with the Court.  They're

20     somewhat hard to read.  If the Court would like, I can

21     read them into the record.

22          These are text messages that were found on

23     Mr. Kane's phones, text messages with his daughter, the

24     daughter at issue in this proceeding.  And I would

25     submit to the Court that these text messages make very

```
 1    clear that Mr. Kane will not obey the Court's orders of

 2    release, would not obey the probation office's

 3    direction, in that any conditions of release, therefore,

 4    would not be sufficient here.

 5         Since the Court has Exhibit 1 -- are you able to

 6    see Exhibit 1?

 7         THE COURT:  I have both Exhibit 1 and Exhibit 2 in

 8    front of me right now.

 9         MR. GREENBERG:  Okay.  Great.  Thank you, Your

10    Honor.  So I mean, I don't know how the Court -- if the

11    Court thinks it can clearly read these or, to me,

12    they're a little blurry, so if the Court would want me

13    to read them into the record, I will.  Or if not, I can

14    just refer to them.  What -- what -- what would the

15    Court like?

16         THE COURT:  I will leave that to you,

17    Mr. Greenberg.

18         MR. GREENBERG:  Okay.  Thank you, Your Honor.

19    Well, Your Honor, looking at the first page of Exhibit 1

20    -- these are -- again, he's communicating with his

21    daughter.

22         And let me say, first of all, these communications

23    themselves were violations -- are violations of the

24    orders that were in place in the state proceeding

25    involving his daughter.  He is not to be texting his
```

1        daughter.  So these were sneaky communications against

2        the ruling in that proceeding.  And that's the first

3        point.

4              The second -- the second thing is when we look at

5        page 1, the second green -- green text down -- and these

6        are all from the defendant, in green.  He says, "maybe

7        we can use this as a way to lose the babysitter.  We

8        have to go to have visits at their office at the DSHS

9        building."

10             And going to page 2, he says, "they are retarded,"

11       presumably referring to the CPS workers.  And then says,

12       "we will see each other without them."  That, again,

13       would be a violation.  Visits with the daughter are

14       supposed to be supervised, and there are very strict

15       terms over those.  His daughter replied, "awesome."  He

16       then says, "well, all we have to do is say we're sick

17       for the visits and see each other anyway."

18             He continues on page 3, "go meet up in Oregon

19       someplace.  I've never done anything to deserve a

20       babysitter to be with my kids."  The daughter agrees.

21             Moving to page 4, his daughter says, "well, just

22       pick me up.  How will they find out?"  Mr. Kane

23       responds, "well, I would want your GRM," presumably

24       grandmother, "take you over to Oregon and meet us at a

25       restaurant.  I don't want to get pulled over in my car

1    with you in there."

2         And going to the last page, he says, "that would be

3    instant" (inaudible).  The daughter suggests that she

4    could go in the bed of the truck.  And he said, "they

5    could see you."  She said, "damn."

6         So these are communications that shouldn't be

7    happening anyway, and communications suggesting a plan

8    to meet up with his daughter in Oregon, a different

9    state, (inaudible) against all of the rules that are in

10   place in that proceeding.

11        If we look at Exhibit 2, another window into the --

12   the attitude and mind of Mr. Kane, he says, "fuck

13   crooked court officers.  We won't follow them.  I will

14   disrespect them, just as the Court disrespects my entire

15   family."  When his daughter says that she doesn't want

16   him to get in trouble, he says, "they can't do anything

17   to me, LOL."

18        These are communications that happened within the

19   last week or so, and I would submit it gives this Court

20   no confidence at all that Mr. Kane would (inaudible) to

21   this Court's orders or those from the probation officer.

22        It also suggests a risk of flight, in terms of

23   trying to get his daughter into Oregon, and that is also

24   echoed in the victim impact letter that we have, that

25   the Court has, where it's reported that Mr. Kane has

1      said in the family court that if he has the opportunity,

2      he would want to get his daughter and girlfriend and go

3      to Idaho to avoid all these orders that are going on

4      from the Court.

5          Let me just quickly, Your Honor, address two

6      arguments that are being set -- I saw, either in the

7      defense memorandum or that I anticipate you will hear

8      shortly.  And that is, firstly, the -- the idea that no

9      firearms and ammunition were found in the defendant's

10     house, and that is correct.  The defense, of course, is

11     suggesting that that is evidence that this defendant is

12     not a harm, is not dangerous.

13         I would submit that that cuts both ways, because

14     from the Government's side, we're concerned that

15     Mr. Kane must have firearms and ammunition somewhere

16     else that we didn't find.  And that's because he has

17     made repeated posts on line about having guns, going to

18     the firing range, having ammunition.  And we've seen the

19     victim impact letter, again, the fact that BS reports

20     that Mr. Kane talks about having guns and ammunition.

21         And so we're left wondering, are they out there

22     somewhere else?  I can't tell you that they are, but

23     it's a concern.  I don't think it's as simple as saying,

24     well, he didn't have any.

25         The second -- the second argument I want to address

1    is -- I think it was suggested at the earlier hearing a

2    few days ago, and there was some inkling of it in the

3    memorandum filed today, somehow suggesting that the

4    Government's strength of the evidence that Mr. Kane made

5    these posts (inaudible).

6        And I would just tell this Court that I believe the

7    government has definitive proof that Mr. Kane made these

8    posts, and the best proof of that is found in the

9    complaint, which is that all of the posts resolve to the

10   IP address at the defendant's residence, and they're

11   subscribed to in his very name.  That should be enough

12   proof that he is the individual making these statements.

13       On top of that, there were numerous screenshots of

14   the posts found on his phone.  There were printouts of

15   some of the posts found in his paperwork at his home.

16   And, of course, the substance of the posts relate to his

17   personal grievances, relates to events that only

18   Mr. Kane is involved in or would really write about in

19   detail.  So I think it's -- I believe the evidence is

20   extremely strong that Mr. Kane made these posts.

21       Lastly, Your Honor, the release plan, such as it is

22   suggested by the defense, is just simply not viable.

23   It's gone through various iterations, and at this point,

24   there is some -- there's even a suggestion that Mr. Kane

25   will go live where his -- where the mother of his

1    girlfriend lives, and they will switch houses.

2         Well, that mother is currently in custody of the

3    daughter, and all of this would have serious

4    implications for the Court proceedings, what CPS is

5    involved in, who is allowed to be where, and none of

6    that has been vetted or discussed at all.  Even if this

7    house swap was to be approved, I would submit that it

8    does little to nothing to mitigate against the danger

9    risk of this defendant and may be against his attitude

10   of being unwilling to comply with Court orders and

11   rules.

12        And so in sum, Your Honor, we would ask the Court

13   to enter a detention order in this matter.

14        THE COURT:  Ms. Carroll.

15        MS. CARROLL:  Thank you, Your Honor.  So I wanted

16   to talk about the factors for the Court to consider; the

17   nature of the offense, the weight of the evidence, the

18   history of the defendant and characteristics and mental

19   and financial family ties, et cetera, that -- that

20   Mr. Kane has with the community.

21        I also want to address some of the things the

22   Government talks about in its presentation, and I will

23   start there.

24        But then we talk about Mr. Kane's criminal history,

25   I would note that the -- the Oregon felony -- the

1    alleged felony the Government talks about are from the

2    mid '90s.  Mr. Kane's last misdemeanor conviction in

3    Washington appears to be from 2010.  The -- the incident

4    where Ms. Halverson notes there is an outstanding

5    warrant is from 2015.  So all of that is -- is fairly

6    dated.

7         The Government talked about that these posts went

8    on for months and months.  The only evidence the Court

9    has before it is from January.

10        The other -- BS, the named complaining witness in

11   the complaint, went and sought a no contact order in

12   Clark County in -- on January 27th.  There's no evidence

13   before the -- in fact, all the evidence is that Mr. Kane

14   has complied with that Court order once it's been in

15   place.

16        These postings that Mr. Kane is alleged to have

17   made were not made to BS.  They were made -- it's very

18   unclear from the complaint what the context of the forum

19   was.  It appears that it's some kind of forum with

20   people who are empathetic with the views that the person

21   who is making the posts was expressing.

22        Talking about the risk of flight, Mr. Kane has a

23   residence in the area.  He has been in the area since

24   the '70s.  He has a girlfriend he has been with for

25   almost ten years.  He has children in the area.  He has

 1    invested in the ongoing dependency matter that he has

 2    going in -- in Clark County.  He is represented by

 3    counsel on that.  It's very important that he be able to

 4    continue to participate in those proceedings.  It's very

 5    clear that he cares deeply about his daughter in the

 6    fight to gain custody of her.

 7         So I think there's -- there's -- despite -- there's

 8    ample evidence that Mr. Kane may say a lot of things,

 9    but I -- I would ask the Court to concentrate on the

10    things that Mr. Kane has actually done, which is not to

11    violate the no contact order, which is to participate in

12    the ongoing -- ongoing dependency matter, which is to

13    have counsel.

14         He has made complaints, apparently, with various

15    law enforcement organizations, but I don't know that

16    that is -- that would be a proper way to address

17    concerns one has about the way one is being treated by

18    either law enforcement or CPS or the Attorney General's

19    Office.

20         We do have a release form.  Mr. Kane can either

21    return to his home.  Ms. Harvey is on the line.  She

22    indicated he is welcome to return there.  I understand

23    the Court has some concerns it may be close to where BS

24    lives.  Again, I would emphasize that there is no

25    indication that he has violated the no contact order

1    that has been in place since January 27th.

2        The Court has ample resources available to it to

3    make sure that Mr. Kane is not in violation of any of

4    its -- of its orders.  We're not relying, as the

5    Government implies, merely on a trust in Mr. Kane.

6    We're relying on various -- various resources the Court

7    has at its disposal.

8        I cited United States versus Daniel Patchew

9    (phonetic) in my -- in my brief.  There, the Court goes

10   through a lengthy list of conditions the Court imposed

11   in a similar case, which involves cyberstalking and

12   doxing.

13       The Court could direct Mr.  -- Mr. Kane to maintain

14   his residence, to have location monitoring at all times,

15   to not have any contact with BS or her family members

16   and to -- to put computer monitoring or limitations on

17   internet access that he has to comply with.

18       I think that those -- if we are to deal with the

19   least restrictive conditions, then I think the

20   (inaudible) could assure the Court that Mr.  -- Mr. Kane

21   would not be a danger to the community and would be

22   (inaudible).

23       Your Honor, to address some of the things that the

24   government brought out, and the Government said that --

25   that Mr. Kane could not have known -- could not have not

1    known that this -- that the assault in 2010 was domestic

2    violence.  I have reviewed the police report.  It was an

3    incident with his brother at an outdoor festival in

4    Seattle.  It is not what one would traditionally think

5    of as domestic violence.  So I think it certainly is

6    possible that somebody would not think of those -- that

7    set of facts as the, quote-unquote, domestic violence.

8        The felonies that the government referred to,

9    again, were from the mid '90s.  Mr. Kane does suffer

10   from documented medical conditions.  He has had a number

11   of back surgeries.  The conditions at FTC are not

12   amenable to that.  He's having a very difficult time

13   with his health inside the FTC, and that is one of the

14   factors the Court can consider.

15       I will say these posts are -- express views that

16   are unpopular, but I ask the Court to focus on -- on the

17   allegations that are -- that are actually before the

18   Court, which are threats.

19       The portions of the posts in -- that are listed in

20   the complaint are taken out of context.  There's liberal

21   use of ellipses.  These are clearly cherrypicked to --

22   to be the worst that the Government could come up with.

23   They are generally general expressions of discontent and

24   general expressions of fears.  There's very little in

25   the way of direct threat towards BS, and this report

1     talked about the specific intent that's required.  These

2     were not made directly to BS.

3         The Government talked about following the school

4     bus.  If -- it is noted Mr. Kane was in the same

5     neighborhood.  If one follows a school bus, one needs to

6     stop every time it does make a stop.  The little sign

7     comes out.  He would not be allowed to pass a school bus

8     if he -- if he was behind it.

9         There -- I think, of note, is that RK is no longer

10    with BS.  She is, as the Government noted, with

11    Ms. Harvey's mother, so within -- within Mr. Kane's

12    extended friends and family.

13        The exhibits that the Court talks about, the

14    Government submitted today, which are text message

15    exchanges purported to be between Mr. Kane and his

16    daughter, Wiley (phonetic), or RK, there's no evidence,

17    again, that Mr. Kane did any of the things that he talks

18    about.

19        This is clearly a difficult time for his daughter.

20    His daughter expresses a desire to be with him.  These

21    could just be efforts by Mr. Kane to -- you know, to

22    reach out to his daughter and -- and make her feel like

23    he wants to be with her, and he will do whatever it

24    takes to be with her.  But he did not do any of those

25    things.  He did not go to Oregon.  He did not circumvent

1    the -- the restrictions that were placed on (inaudible).

2          So given -- so this is the actual things that

3    Mr. Kane does, I think the Court has less to be worried

4    about and I think would be conditions that the Court

5    could put in place on Mr. Kane, to include location

6    monitoring and to include internet restrictions.

7          I think the Court can be assured that Mr. Kane

8    would not be a danger to the community and would not

9    seek to flee the jurisdiction during the pendency of

10   this case.

11         THE COURT:  Thank you.  And I'm going to ask

12   Ms. Halvorson, is there anything that you want to put on

13   the record besides what is in the supplemental pretrial

14   services report?

15         MS. HALVORSON:  No, Your Honor.

16         THE COURT:  All right.  And is the Government

17   wanting to provide any rebuttal argument?

18         MR. GREENBERG:  Your Honor, just two very quick

19   points.  First is that, as indicated in the complaint,

20   although it's not fully illuminated, the posts that

21   Mr. Kane was making are publicly available, publicly

22   viewable, and that -- that phrase is in the complaint on

23   page 4, line 24.

24         These -- these are posts that appear as, like,

25   comments underneath articles or videos that people are

1   seeing on line.  So these were very much in the public

2   domain and available for anyone to see, including BS.

3        The last point I want to make is counsel argued,

4   well, he talked about going to Oregon with his daughter

5   but never did it.  Well, if you look at Exhibit 1, those

6   communications were on March 15th, the day before

7   Mr. Kane was arrested in this case.  And so he didn't do

8   it, but he certainly didn't have an opportunity to do

9   it.  He was talking about it and then got immediately

10   arrested.

11        That's all, Your Honor.

12        THE COURT:  All right.

13        MS. CARROLL:  Your Honor, if I could just add one

14   thing.  I mean, the dependency case has been ongoing for

15   a while.  Certainly, there are many opportunities he

16   would have had to -- to do those kinds of things.

17   There's no evidence he did any of that.

18        The Government indicated that Mr. Kane refused to

19   interact with police when they attempted to serve him

20   with the -- with the no contact order and the -- the

21   required notice about firearms.  I've reviewed some of

22   the records from Clark County.  There is a signed notice

23   in there that Mr. Kane signed attesting that he did not

24   have firearms to -- to surrender, which appears to be

25   the case, given that the search warrant was executed on

```
1        his house and no firearms were found.
2              THE COURT:  All right.  The Court is going to take
3        a very short recess, and then I will come back on the
4        record and give you my ruling.
5              THE CLERK:  This court is in recess.
6                     (A short recess was then taken.)
7               THE CLERK:   All rise.  This court is session.  The
8         Honorable Theresa L. Fricke presiding.
9              THE COURT:  Please be seated.  The Court has
10       considered all of the factors in the Bail Reform Act, 18
11       United States Code, Section 3142, subsection (g).  Also,
12       the Court is confirming this is not a case where there
13       is a statutory presumption.  The Government bears the
14       burden of showing, by a preponderance of the evidence,
15       that Mr. Kane is a flight risk.  The Government bears
16       the burden by clear and convincing evidence that
17       Mr. Kane poses a danger to others or to the community.
18             The defendant, in any criminal case, has the
19       Constitutional right to be presumed innocent.  And in
20       this matter, Mr. Kane is at the very earliest stages of
21       this criminal matter where he's been charged by
22       complaint, and the Court's responsibility, under the
23       Bail Reform Act, is to consider all of the information
24       presented to the Court by the defense and by the
25       Government, and make a determination whether there are
```

1    no conditions or a combination of conditions that will

2    reasonably assure the safety of the community or the

3    appearance of the defendant, as required, and the Court

4    is to consider the least restrictive means of mitigating

5    any risk.

6        In this situation, the Court finds that the

7    government has met its burden as to both the risk of

8    dangerousness and the risk of flight, and the Court is

9    going to order that Mr. Kane be detained pending trial.

10        I have considered the information provided by the

11    defense, and in the defendant's favor, he has been a

12    long time resident of the state of Washington and a

13    person who has had stable ties to his community.  He

14    clearly has family and friends who are important to him,

15    and they are people who care about him as well.  He

16    clearly deeply cares about his family, and so the Court

17    has considered those factors in Mr. Kane's favor.

18        The Court finds, however, that those factors are

19    outweighed by the information that was presented by the

20    Government and that by clear and convincing evidence,

21    the Government has shown that there is a severe risk,

22    based on both prior convictions and based on the

23    information that is contained in the complaint, so the

24    circumstances of the offense that is before the Court

25    right now.

1        Of course, at an early stage of the case, the Court

2     is not in a position to determine just how strong the

3     Government's evidence ultimately would be at trial,

4     because this is still at a very early stage of the case.

5        Based on information in the complaint, as well as

6     information presented during this hearing, the violation

7     of the anti-harrassment order, of course, is very strong

8     evidence that Mr. Kane has not complied with Court

9     orders in the past.

10       Also, the circumstances of the current offense, the

11    serious threats and the communications that were made

12    publicly that were of a very serious threatening nature,

13    and also, communications that he has access to or

14    possesses firearms and ammunition.

15       And in addition, the Court considered the text

16    messages that were placed into the record, Exhibits 1

17    and 2 that the Government has placed into the record.

18       And the Court also is concerned about this pending

19    arrest warrant from Oregon showing that there is

20    concern, based on these police reports, that false

21    statements were made concerning obtaining a firearm.

22       And in addition, the Court is concerned about the

23    potential that upcoming events in the child custody

24    proceedings could make a difficult situation even more

25    difficult, in terms of Mr. Kane's potential for not

1     obeying Court orders.

2          So the Court is going to grant the government's

3     motion for detention, and I find that the proposed

4     placement that has been suggested by the defense in the

5     defense brief would not be sufficient to mitigate the

6     risk of dangerousness or the risk of flight.  And the

7     risk of flight, I think, here is mainly based on the

8     fact that there were some communications about going to

9     Oregon, that those communications were made at a time

10    when it would appear that perhaps the defendant wanted

11    to leave the jurisdiction in order to avoid the child

12    custody Court's orders and future hearings in that

13    matter.  So that certainly is, by a preponderance of the

14    evidence, a risk of flight.

15         So that will be the Court's ruling.  Of course, I

16    will issue a written decision that is required under the

17    Bail Reform Act.  Do counsel wish to raise any other

18    matters at this time?

19         MATHIAS KANE:  Could I say one thing, Your Honor?

20         THE COURT:  You know, I will leave it to you to

21    consult with your attorney about whether you would he

22    like to waive your right to remain silent.  That's a

23    very serious matter in any hearing --

24         MATHIAS KANE:  I just want to say that I'm scared

25    for my daughter because of how she's going to react to

1    the fact that I'm not going to be able to be there for

2    the dependency.  That's pretty much all I wanted to say.

3         She's -- she's been hurting herself, cutting

4    herself over all of this, and that's pretty much my main

5    concern as how her -- her safety and how she's going to

6    feel about this, because she loves me deeply, and I love

7    her deeply.  And we just want -- we wanted to be

8    together and bring our family back together.  That's all

9    we ever wanted.

10        THE COURT:  Okay.  And, Ms. Carroll, did you want

11   to consult with your client, or is the statement that he

12   just made something that you're comfortable placing on

13   the record?

14        MS. CARROLL:  No, I -- I think Mr. Kane just wanted

15   to express his concern about his daughter's reaction of

16   his being detained.

17        MATHIAS KANE:  I'm scared.

18        THE COURT:  Okay.

19        MATHIAS KANE:  I'm scared of what -- how she's

20   going to react, Your Honor.

21        THE COURT:  Okay.  All right.  Then at this time,

22   the defendant will be remanded to the custody of the

23   United States marshall pending the next hearing in this

24   matter, and the Court will now be in recess.

25        THE CLERK:  All rise.

```
1              (Conclusion of hearing.)

2

3

4              /s/ Mary M. Paradise, CSR 2469

5              Certified Court Reporter

6              Reed Jackson Watkins, LLC

7              Court Approved Transcription Company

8              1326 Fifth Avenue, Suite 710

9              Seattle, Washington 98101

10             206.624.3005

11             jackson@rjwtranscripts.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```