1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE BENJAMIN SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR20-5271 BHS |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | |
| MATHIAS KANE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Mathias Douglas Kane, by and through his attorneys Nicholas Vitek and Joshua Saunders, hereby files this memorandum in aid of sentencing. Mr. Kane requests that this Court accept and impose the 11(c)(1)(C) plea and sentence Mr. Kane to time served. As discussed below, Mr. Kane is a non-violent offender who was experiencing incredible stress and lack of support during an ongoing family law dispute and took to the internet to express his frustration in an inappropriate manner. This caused Mr. Kane to be detained for more than a year, experience pretrial conditions more like those at a United States Penitentiary, be exposed to COVID-19 during his pretrial custody, lose custody of his daughter, and incur tens of thousands of dollars of damage to his house while in custody. For those reasons, as further detailed below, Mr. Kane requests that the

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 1

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

Court impose a term of supervised release of six months or less without any special conditions, and not impose any fine.[1]

### I. *Mr. Kane's Actions Reflected His Concern for His Daughter, not Hatred or Bigotry*
#### a. *Mr. Kane's life has been marked by familial instability*

Mathias Kane was born in Torrance, California, to Wayne and Linda Kane. Both of his parents were addicted to heroin. PSI ¶ 45. When he was an infant, they gave him and his twin brother up to be raised by his grandparents. Id. at 46. The family moved to Oklahoma when Mr. Kane was three. Id. His grandfather, a plumber, built the family a house. One year later, the house was destroyed by a tornado, and the family moved to Cowlitz County in Washington. Id.

Mr. Kane's father would visit the family occasionally, telling the boys that he was their uncle. Id. at 47. He took the boys camping but would also steal from their grandfather. Mr. Kane learned that his "uncle" was his father at age eight or nine. Id. In 1982, when he was ten, his grandparents divorced acrimoniously. Id. His grandmother died two years later. His grandfather died in a traumatic hospital event in 1996. Both of his parents later committed suicide.  Id. at 53.

---

[1] Although the United States and Mr. Kane reached an agreement only on the terms of imprisonment, the plea agreement recognized that the ***Court*** was free to impose a fine or conditions of supervised release. In plea negotiations with the United States, there was no discussion of a fine, and the United States specifically opposed the special conditions for his release they now advocate in their sentencing memorandum. See e.g., United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002) (In construing a plea agreement drafted by the government, the Court must determine what the defendant "reasonably believed to be the terms of the plea agreement at the time of the plea."); Santobello v. New York, 404 U.S. 257, 260 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.") (emphasis added).

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 2

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

Mr. Kane went on to have four children of his own with three different women. He does not have a strong relationship with the two oldest, but his relationship with his daughter RK (now age 14) is very strong. His youngest child is age 4. He served as an active parent in her life until his incarceration and subsequent separation from her mother, Brittany Harvey.

### b. Mr. Kane's Relationship With His Daughter, RK, Is The Only Meaningful Family That Mr. Kane Has.

Mr. Kane has been the sole caretaker for RK since she was two years old. Her mother, Shanna Erickson, was addicted to heroin and methamphetamine. She was unable to care for RK but would show up at Mr. Kane's house in the middle of the night, high and demanding to see her daughter. This was traumatic for Mr. Kane and RK, but he did his best to shield his daughter from the consequences of her mother's addiction. Ultimately both parents were both required to take drug tests by a family court. Mr. Kane's was clean, while Ms. Erickson tested positive for multiple drugs. He was awarded sole custody.

For years, Mr. Kane alone was responsible for RK's welfare. He fed her, bathed her, and clothed her. He was the person who potty trained her as a toddler. He took her to medical appointments and paid for her preschool. He took her to swimming lessons, to the park, and out to restaurants. Father and daughter have been on many vacations together—twice to Disneyworld, to Discovery Cove to swim with dolphins, to Yellowstone, to Sea World, and many others.

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 3

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26





So often deprived of meaningful family connections himself, Mr. Kane created a bond with his daughter RK unlike any that he had had as a child.

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

### c.  Mr. Kane's Actions In This Case Are The Regrettable Actions Of A Concerned And Angry Father.

Mr. Kane regrets the statements that he made in this case about BS. He has had fourteen months in custody to reflect on the events that led to his detention, and he wants the Court to understand that his statements came from a place of frustration and fear, not hatred or bigotry.

RK's departure from his home stemmed from disputes between her and Mr. Kane's then-girlfriend, Brittany Harvey. Ms. Harvey had used corporal punishment on RK, which led to CPS involvement with the family. RK went to school and told BS's daughter, a friend of hers, about the discipline. A no-contact order against Brittany was issued by the family court, which led to Mr. Kane having RK stay with her maternal grandmother. RK then left her grandmother's house and began living with BS.[2] Mr. Kane was unaware of the change and so was shocked when he received a call from RK's grandmother informing him that RK was living with BS.

Mr. Kane began to hear things, from RK's grandmother and other sources, about RK's welfare that deeply concerned him. He heard that RK was suicidal and was committing self-harm by cutting herself. Because RK was in the care of BS, Mr. Kane held BS responsible for the decline in RK's mental health and then took steps to try and have RK returned to him.

In early January 2020, Mr. Kane went to the La Center Police Department to

---

[2] Mr. Kane has a young daughter with Ms. Harvey. By having a no-contact order, Mr. Kane was faced with the choice of having forcing his young daughter and mother of his child leave the house, or place RK temporarily with her grandmother.

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 5

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

report his concerns to law enforcement. <u>See</u> La Center Police Reports at Kane_00000006-8. The police report states that Mr. Kane reported the "Father of 13-year-old daughter is reporting she is in danger where she currently resides". The report states that the police concluded that RK was "in good care." However, soon after, RK was sent to a hospital in Oregon. BS provided written consent for "her" child to receive care. Kane_000009-11. However, to Mr. Kane's perspective, BS was not the parent of RK and thus had no authority to send her to a hospital. Rather, Mr. Kane believed that RK should return home and stay with him, where none of these issues of mental health that RK was exhibiting had ever been exhibited before. As such, Mr. Kane reached out to the Oregon State Police regarding RK's transfer to the hospital in Oregon. <u>See</u> Oregon State Police Report at Kane_00000464-471 (stating that a "Washington resident advised his daughter was taken from state and admitted into [] hospital in Portland without his knowledge and against his wishes."). However, Mr. Kane received no help.

At the hospital in Oregon, Mr. Kane was permitted to have supervised phone calls with her from the CPS office and she told him that she just wanted to come home. She begged him to come get her and explained that she was self-harming because she wanted to come home.

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 6

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

1
2
3
4
5
6
7
8



Picture of RK's arm showing injuries she inflicted on herself.

9
10       Mr. Kane was beside himself with worry over the harm that RK was causing
11
herself, and expressed himself in a manner that may have been counterproductive. As
12
such, although Mr. Kane made repeated requests to law enforcement for assistance,
13
14
including multiple attempts with the local La Center Police Department as well as a
15
phone call to the FBI in February 2020, Mr. Kane was unable to obtain any assistance
16
in having RK returned.
17
18       Feeling powerless, Mr. Kane expressed his anger about the situation on an online
19
forum in January 2020. To Mr. Kane, he was merely exercising his First Amendment
20
right to vent about and express his anger and rage about the powerlessness and impotency
21
he felt. Mr. Kane had failed to protect his daughter, and for that, he lashed out to those
22
he felt were responsible for that failure, including BS. Unlike in the real world, online
23
24
Mr. Kane could be powerful – he could express himself and others on the forum would
25
express support for his situation. Unfortunately, this caused Mr. Kane to become more
26

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 7

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

free in what he said online and his verbiage to become more drastic. However, it is important to understand from Mr. Kane's perspective, this was all expression. Mr. Kane is disabled and has, other than a fight with brother a decade earlier, no violence in his background. The idea that anyone would take his comments as serious expressions of anything other than venting anger and frustration was not what he intended.

In fact, once approached by law enforcement about his online statements, Mr. Kane immediately stopped posting anything else about BS. The police searched his home and found no weapons. In short, the eventual investigation demonstrated that Mr. Kane was making statements online that he had no intention or capacity to fulfil. He regrets those statements and did not intend to cause fear to BS or anyone else. But Mr. Kane hopes that the Court will understand his statements to be what they were—angry pleas of a deeply concerned father.

## II.   Mr. Kane Has Already Been Punished Enough To Be Deterred From Future Misconduct

### a.   The parties agree that a sentence of "time served" is appropriate

The defense agrees with the United States and the Department of Probation that Mr. Kane's offense level is 12. We agree that Mr. Kane's Criminal History Category is II and that the advisory Sentencing Guidelines range is 12-18 months. Mr. Kane has already served 14 months at the FDC. As such, a 14-month sentence is effectively at the high end of the applicable Sentencing Guidelines range when factoring in credit for good time and release to a halfway house.

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 8

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

### b.  This Court Should Impose Term Of Supervised Release Of Six Months Or Less.

This Court should impose a six-month or less term of supervised release because a longer term is not necessary under 18 U.S.C. § 3553(a). This is because, in part, Mr. Kane has served an above-guideline sentence in some of harshest pretrial conditions that exist for federal crimes. In recognition of this difficult sentence, this Court should find that Mr. Kane's term of imprisonment that he has already served all the sentencing requirements of 18 U.S.C. § 3553(a). It is important to note that Mr. Kane has been on pretrial release since his plea, with minimal restrictions, and has had no issues. Thus, there is nothing to indicate that Mr. Kane would benefit from continued supervision. Additionally, because Mr. Kane desires to avoid opiates to control back pain that he suffers as a result of his disability, a term of supervised release would prohibit him from using non-opiate pain relief because the Federal government continues to criminalize the use of marijuana.

In Mr. Kane's plea agreement, the parties agreed that the Court *could* impose a term of supervised release of up to two years. Likewise, 18 U.S.C. § 3583 states that a court "*may* include as part of the sentence a requirement that the defendant be placed on a term of supervised release[.]" (emphasis added). In determining whether a term of supervised release is appropriate, the Court should use most of the same sentencing factors in determining a sentence. Id. subsection (c); see also 18 U.S.C. § 3553(a). Thus, in determining whether to impose a term of supervised release, the Court should consider the nature and circumstances of the offense and the defendant (18 U.S.C. § 3553(a)(1)),

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 9

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

the need to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B)), to protect the public from further crimes from the defendant (18 U.S.C. § 3553(a)(2)(C)), the need for training and education (18 U.S.C. § 3553(a)(2)(D)), the recommendation of the guidelines (18 U.S.C. § 3553(a)(4); (a)(5)), the need for unwarranted disparities (18 U.S.C. § 3553(a)(6)), and the need to impose restitution (18 U.S.C. § 3553(a)(7)).

The characteristics of the offense and Mr. Kane do not support the imposition of a term of supervised release longer than six months. As detailed above, Mr. Kane's role in the offense was that of a father concerned for his daughter – he was not trying to cause direct harm to BS or others and he believed that his daughter was in danger and that he was unable to help her. These are not actions that create a need for supervised release. In fact, the record shows that Mr. Kane made multiple attempts to contact and work with law enforcement agencies – certainly not the type of actions that would warrant the need for continued supervision.

Because Mr. Kane has already served an above-guideline sentence while in harsh conditions, a term of supervised release longer than six months is not necessary to deter future criminal conduct. Mr. Kane has spent fourteen months in pretrial custody. If Mr. Kane were sentenced to prison without any pretrial detention, he would have served that sentence at a minimum-security camp. See generally, Inmate Security Designation and Custody Classification Manual, P5100.08. Minimum security camps have limited security, access to programing, and visits with family. Instead, Mr. Kane served fourteen months at the FDC during a pandemic. The immediate result of this is that Mr. Kane was

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 10

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

locked into his cell, with limited access to showers, recreation time or visits from family. As such, the time that Mr. Kane served is more akin to serving time as a United States Penitentiary than a minimum-security camp. During his incarceration, his parental rights with RK were terminated when he was forced to miss a family hearing because the FDC refused to transport him to the hearing.[3] Thus, the term of imprisonment that Mr. Kane has served is a sentence that has already afforded deterrence and thus there is no need for an additional deterrence through the imposition of a longer term of supervised release.

Likewise, when Mr. Kane was contacted by law enforcement about his online posts, he immediately stopped making additional posts. Such actions demonstrate that once the gravity of his actions became apparent to him, he stopped. Thus, a term of supervised release is unnecessary to protect the public. Mr. Kane has no desire to have any contact with BS, and in fact, plans to sell his house and begin living in a new part of the country to put this event in the past. Undersigned counsel believes that there is an existing no-contact order with BS, and thus a term of supervised release is unnecessary to provide any protections to BS. Likewise, BS is not seeking restitution, thus, there is no need to impose supervised release to support any restitution payment schedule.

Rather, a lengthy term of supervised release will cause Mr. Kane difficulty. As the Presentence Report details, Mr. Kane suffered a workplace back injury in 2009. PSI ¶ 51. Originally, Mr. Kane was placed on Oxycodone for his related back pain. Id. ¶ 58. As the

---

[3] Mr. Kane is in the process of restoring his parental rights with RK and has had been able to spend time with her since his release.

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 11

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

Court is aware, the dangers of opiates and the risk for addiction is extremely high. Because of this, Mr. Kane did not want to use opiates to help continue to control his back pain, and instead began using medical marijuana. PSI ¶ 62. However, the United States still criminalizes the use of marijuana and does not recognize that marijuana has any medical validity. Thus, according to United States policy, the only acceptable drug to help control his pain are opiates – a drug that has caused the death of thousands and the addiction of millions. Nevertheless, if the Court were to impose a term of supervised release and he were to use marijuana to help control his back pain, the United States could seek his re-incarceration for no other reason than the use of a drug used by millions without issue. Thus, a term of supervised release will put Mr. Kane in the difficult position of having to choose between a drug unrecognized by the Federal government as helpful for managing his pain, and one that is recognized by the government but is highly addictive and potentially life-altering.

As such, for these reasons, Mr. Kane requests that this Court impose a term of supervised release of six months or less.

### c. If The Court Imposes A Term Of Supervised Release, It Should Limit The Special Conditions

However, if a term of supervised release is imposed, this Court should not impose any of the special conditions proposed. First, it is important to emphasize that Mr. Kane was released on only the standard conditions and has had no issues with those conditions. Thus, there is nothing in Mr. Kane's specific conduct since his release that would warrant the imposition of any special conditions.

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 12

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

If the Court imposes supervised release and an issue arises where a special condition is warranted, probation should seek the court's approval then. Additionally, although Mr. Kane was aware that the Court *could* impose special conditions related to his supervised release, the Government's advocacy for these conditions is outside the terms for the agreement. Although Mr. Kane is eager to end this case and move on with his life, the imposition of conditions that are now being advocated places Mr. Kane in a difficult spot.

### d. A Fine Is Unwarranted

Mr. Kane is clearly incapable of paying a fine. Mr. Kane's only income is derived from his disability pension, comprising a positive cash flow of only a few hundred dollars a month. PSI ¶ 71. Importantly, this is not a crime of financial gain where Mr. Kane's ill-gotten gains must be recouped. Rather, a fine can only be viewed as a punishment. However, as discussed above, Mr. Kane has already been sufficiently punished for his conduct. He has served an above-guideline sentence in conditions that are far more server than he would if he served his sentence after conviction. Thus, to impose a fine would be unfair and unjust.

Likewise, the statement of financial resources that Mr. Kane provided to probation for the Presentence Report fails to include all the costs that have been incurred while he was incarcerated. Upon his release, Mr. Kane discovered that his then-girlfriend and her mother have stolen more than $7,000 from him. See Report to La Center Police, dated May 17, 2021. Mr. Kane had authorized the occupants of the house to make payments

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 13

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

necessary to the mortgage as well as for electricity and water usage. However, bank statement records show thousands of dollars made for cash withdrawals, trips to Walmart, PayPal transfers, as well as purchases for restaurants and other personal expenditures that far exceed what was necessary to keep Mr. Kane's property up-to-date. For example, in one 60-day period, close to two thousand dollars in cash withdrawals were made against Mr. Kane's bank account. Id.

As such, the amount of money that Mr. Kane would have to spend on a fine is substantially less than what he first reported to probation, since the extent of the theft was unknown to Mr. Kane at the time of his probation interview. Because Mr. Kane did not financially benefit from this offense, lives off a fixed income, and has lost thousands of dollars in connection with his incarceration, a fine is unwarranted.

## CONCLUSION

For all the above reasons, Mr. Kane requests that this Court accept the plea agreement, impose a sentence of time-served, issue a term of supervised release of six months or less, not add any special conditions, and not impose a fine.

Respectfully submitted this 21st day of July 2021.


/s/ Nicholas Vitek
Nicholas J. Vitek
Attorney for the Defendant
Vitek Law LLC

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 14

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800

1  1700 Seventh Ave, Suite 2100
   Seattle, WA 98101
2  Tel: 206.673.2800
   Fax: 206.408.6823
3  vitek@viteklaw.com

4

5  /s/ Joshua Saunders
   Joshua R. Saunders
6  Attorney for the Defendant
   Law Office of Joshua R. Saunders PLLC
7  533 Martin Luther King Jr Way S
8  Seattle, WA 98144
   Tel: 253-245-3553
9  jrsaunderslaw@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 15

1

2

**Certificate of Service**

3

I hereby certify that on July 21st, 2021, I electronically filed the foregoing with

4

the Clerk of the Court using the CM/ECF system which will send notification of such

5

6

filing to the attorneys of record for the defendants.

7

8

s/ Nicholas Vitek
Nicholas J. Vitek

9

Attorney for the Defendant

10

Vitek Law LLC
1700 Seventh Ave, Suite 2100

11

Seattle, WA 98101
Tel: 206.673.2800

12

Fax: 206.408.6823

13

vitek@viteklaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

SENTENCING MEMORANDUM

(*United States v. Kane*, No 20-05271) - 16

VITEK LAW LLC
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 673-2800